McBride, judge.
Plaintiff claims that he was in the employ of the defendant -as salesman from May 1 to May 22, 1947, and alleges that he is entitled to- 45% of the gross profit o-n all sales made by him during that period, and by this suit seeks an accounting from defendant and prays for a judgment of “approximately $450.00”- for the commissions due-him.
The answer admits the employment, but denies that plaintiff is entitled to the commissions sued for. However, defendant admitted that there was due plaintiff the sum o-f $65.00 on certain enumerated sales in the country parishes, and it deposited tha.t amount in the registry of the court for plaintiff’s- account.
After a hearing of the case on its merits below,- plaintiff recovered judgment for $65.00, from which he appeals..
*279 Alamis Company, Inc., a small corporation organized in 1946, is engaged in the handling of drugs and drug sundries. Prior to- April 29, 1947, all of its corporate stock, except perhaps two qualifying shares, was owned by plaintiff and one Bert W. Thorburn. On that date, the former sold his stock to Thorburn, who has since conducted the corporate business.
Before the said transaction took place, Mitchell had been president of the corporation, and he also acted as salesman and 'had control of a large number of accounts both within and without the City of New Orleans. His contention is that upon severing his connection with the corporation as stockholder, he was importuned:by Thorburn to remain with the corporation in the capacity of salesman. Mitchell’s testimony is to the effect that he agreed to remain, if he was allowed a commission of 45% of the gross profits from all sales made to any of his former- accounts, including • reorders, or to any new accounts that he might develop, either in or out of the city. Mitchell claims that he worked until the 22nd of May, when he-left to- accept employment with a competitor of defendant, and that during the time he was with defendant, he contacted many customers, except perhaps there may have been a day or two that he did not take orders, and that orders were coming through all of the time, the last one on May 20.
Thorburn emphatically denies Mitchell’s statements. He insisted that the agreement, which was verbal, contemplated that Mitchell was to sell only outside of New Orleans, and that commission was to be paid him only on orders actually secured by him through contact with the customers. It thus appears that the controversy is to be determined on the basis of whether the testimony of Mitchell or of Thor-burn is to prevail.
There appears in the record, howevei, some evidence bolstering, if not corroborating, Mitchell’s testimony.
During the course of the trial below, there was produced a number of invoices issued by defendant to various firms and individuals in New Orleans, and also in the parishes, bearing dates during Mitchell’s tenure of employment as salesman, and each invoice contains a notation that Mitchell was the salesman. These invoices cover sales in addition to those mentioned in defendant’s answer and for which it gave plaintiff credit. For some reason, the documents were not introduced in evidence, but, nevertheless, it is conceded by counsel that they exist and that they were presented to the witnesses for identification, which fact is borne out by the transcription of the testimony. Counsel, in addition, have extensively referred to the invoices in their briefs.
When asked the reason for the appearance of Mitchell’s .name on each of the invoices, Thorburn explained that they were rendered to accounts which were formerly sold by Mitchell, but that he actually made none of the sales evidenced by the invoices. Thorburn intimated that the orders had been received directly from the customers, without any intervention on the part of Mitchell, and stated that it was a custom of the business to place the salesman’s name on all invoices when they were rendered to accounts formerly handled by the salesman, although he did not sell the merchandise shown on the invoices.
Mrs. Thorburn, who is connected with the corporation in a clerical capacity; stated that it was she who placed plaintiff’s name on the documents, and that she did so in line with the custom above mentioned, and that whenever a bill was sent out, the name of the salesman who had charge of the account, whether he actually made the sale or not, was placed on the invoice, for the purpose of the company’s records, and that the appearance of Mitchell’s name did not necessarily indicate that he had actually taken the orders.
While this action is defended on the ground that Mitchell did not make the sales, Thorburn was unable to state .whether any of the orders for the merchandise had been sent in by the customers direct, *280 or if Mitchell had brought them in. Thor-burn, to say the least, is very vagué in his statements regarding this important detail. At various points in the' record, appear statements made by him, such as these:
“A. I suppose MÍr. Mitchell made the sale, but whether he made it before, or during April, or during May, I don’t know.
* * * * * *
“Q. Mr. Thorburn, what. I want to know is do- you know who made this sale to Walgreen’s Drug Store, No. 4503. A. Presumably Mr. Mitchell made it, but when, I don’t know.
* * * * ' * *
“Q. * * * I 'have invoice No. 4502 dated the same day, to ■ Walgreen’s ■' on Cánál Street, New Orleans, Louisiana, $50.40. 'Do you know any of the particulars of that? A. I'really don’t know.
"Q. It has Mr. Mitchell’s name as salesman. A. If it has he wasn’t due any commission.
“Q. Why not? A. Because I wasn’t giving him credit on anything around the city.
*******
“A. I can presume he made the sale some, of the-times, and. others you don’t know .whether it is a back-order. .
******'
“Q. I ’have invoice No. 4480, dated May 16, 1947, to-Walgreen’s Drug Store, 900 Canal St., in the amount of $72., and the salesman is Mitchell again. Do you know whether or not Mr. Mitchell máde that sale? A. I don’t know when'he made the sale.
******
“A. Nobody else sold them. He sold them,' but I don’t know when.” •
The fact that plaintiff’s' name appears on each of the disputed invoices, taken in connection with the testimony of Thor-burn, part of which is quoted above, leads us to the conclusion that Mitchell is entitled to commissions on the- 'sales. The testimony shows that eight ■ sales were made in the parishes, aggregating $1,883.-86, and'that'thirteen wefe'made to customers in New Orleans, aggregating $616.-25. There is ■ no dispute 'that the- defendant’s gross profits on sales' amounted' to 25% thereof. ■
We do riot deem it necessary to resolve the sharp conflict between Thor-burn and Mitchell as to whether the latter is entitled to commissions on the city sales. No matter what the agreement was in that respect, we believe Mitchell is entitled to commissio-hs, as his name appears on the invoices and evidently he brought the orders in, for the testimony of Thorburn to the contrary makes no impression upon us.
We think the law is quite plain that, where a .person knowingly and voluntarily accepts the. benefits under a contract which his agent has made in his behalf, 'but without his- authority, he thereby assumes its obligations, and we believe that the obligations assumed embrace the payment of the salesman’s commission. .-
It is suggested 'by counsel for defendant that a spirit of altruism motivated Mitchell in securing the New Orleans orders; as Thorburn still o-wed him $6,000.00 on the stock transaction, and Mitchell desired to assist Thorburn in taking care .o-f the obligation. We are not in the least impressed by this argument.
In addition to the $65:00 admittedly due plaintiff, the 45% commission on the gross profits o-f the other sales amounts to $281.26, and we believe that the judgment should -be increased by that amount.
While we are reluctant to- interfere with a judgment'in a- case involving strict’” questions-of fact, a painstaking study of the record convinces us that plaintiff • is entitled to commissions- on the disputed sales.' ■
For the reasons assigned, the judgment is' amended so as to increase the amount thereof to $346.26, and as thus amended it is affirmed. Defendant-appellee .is to pay all- costs.
Amended and' affirmed.